UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROCHELLE CURTIS o/b/o A.J.C.W.,

                        Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

<u>DECISION AND ORDER</u>

17-CV-6854L

Plaintiff, on behalf of her minor son, A.J.C.W. ("claimant"), appeals from a denial of supplemental security income benefits by the Commissioner of Social Security ("the Commissioner"), based on the Commissioner's finding that A.J.C.W. was not disabled.

Plaintiff protectively filed an application for Supplemental Security Income on June 11, 2014, on A.J.C.W.'s behalf, claiming disability as of February 1, 2013. That claim was initially denied on October 9, 2014. Plaintiff requested a hearing, which was held on July 21, 2016 via videoconference before Administrative Law Judge ("ALJ") Gregory M. Hamel. (Dkt. #8 at 21). August 31, 2016, the ALJ issued a decision concluding that A.J.C.W. was not disabled. (Dkt. #8 at 21-38). That decision became the final decision of the Commissioner when the Appeals Council denied review on October 23, 2017. (Dkt. #8 at 1-4). Plaintiff now appeals.

Plaintiff has moved (Dkt. #12) and the Commissioner has cross moved (Dkt. #17) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c). For the reasons that follow, I find that the Commissioner's decision is supported by substantial evidence, and was not the product of legal error.

# DISCUSSION

## I. Relevant Standards

Because A.J.C.W. is a child, a particularized, three-step sequential analysis is used to determine whether he is disabled. First, the ALJ must determine whether the child is engaged in substantial gainful activity. *See* 20 CFR §416.924. If so, the claimant is not disabled. If not, the ALJ proceeds to step two, and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. If not, the analysis concludes with a finding of "not disabled." If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §416.924) – that is, if the child's impairments are functionally equivalent in severity to those contained in a listed impairment – the claimant is disabled. If not, he is not disabled. In making this assessment, the ALJ must measure the child's limitations in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. Medically determinable impairments will be found to equal a listed impairment where they result in "marked" limitations in *two or more* domains of functioning, or an "extreme" limitation in one or more. 20 CFR §§416.926a(a), (d) (emphasis added).

The Commissioner's decision that A.J.C.W. is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).

**II.     The ALJ's Decision**

The ALJ initially found that since the June 11, 2014 application date, A.J.C.W. (12 years old at the time of the application) has had the severe impairment of attention deficit hyperactivity disorder ("ADHD"). (Dkt. #8 at 24). The ALJ proceeded to analyze whether A.J.C.W. has any "marked" or "extreme" limitations in any of the six domains of functioning. Based on the medical, educational and testimonial evidence presented, the ALJ concluded that since February 1, 2013, A.J.C.W. has had a less than marked limitation in acquiring and using information, a less than marked limitation in attending and completing tasks, a less than marked limitation in interacting and relating with others, no limitation in moving about and manipulating objects, a less than marked limitation in caring for himself, and no limitations in health and physical well-being. The ALJ accordingly concluded that A.J.C.W. is "not disabled." (Dkt. #8 at 30-37).

**III.    The ALJ's Assessment of the Opinions of Record**

Plaintiff argues that the ALJ failed to properly evaluate, or afford sufficient credit to, the June 8, 2016 opinion of plaintiff's treating psychologist, Dr. Olivia Chiang. (Dkt. #8 at 494-96).

It is well settled that under the treating physician rule that was in place at the time the ALJ's decision was rendered, the ALJ was obligated to grant controlling weight to the opinion of a treating physician, so long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [wa]s not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§404.1527(c)(2). Where an ALJ declines to grant controlling weight to a treating physician's opinions, he must set forth "good reasons" for having done so. *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

Dr. Chiang first evaluated A.J.C.W. on March 30, 2013, and provided him with behavioral counseling on a periodic basis for a few months beginning in or around July 11, 2014. (Dkt. #8

3

at 469-70). On June 8, 2016, Dr. Chiang completed a check-box style medical source statement, opining without elaboration that A.J.C.W. has "marked" limitations in the domains of: (1) acquiring and using information; (2) attending and completing tasks; and (3) interacting and relating with others. She also opined that A.J.C.W. has moderate limitations in caring for himself. (Dkt. #8 at 495-96).

The ALJ afforded "limited" weight to Dr. Chiang's opinion, noting that it was unsupported by Dr. Chiang's treatment records, which consistently found plaintiff to be well-groomed, cooperative, logical and goal-directed in thought, albeit with fair to poor insight and fair or impulsive judgment. (Dkt. #8 at 469, 472, 589, 592). The ALJ also observed that Dr. Chiang's opinion did not include any narrative explanation for the marked limitations she identified via check marks, was authored one year after her last treatment visit with plaintiff (which occurred during a time he was "off" of his medications), was contradicted by A.J.C.W.'s test scores on the Woodcock-Johnson test of cognitive functioning (which found that A.J.C.W. had average intellectual ability, verbal ability, thinking ability, cognitive efficiency, academic skills, and most reading skills, and average to advanced skills in several mathematical categories), and conflicted with recent assessments from other sources, including a January 5, 2015 report from A.J.C.W.'s school psychologist, Gretchen A. Bartosch, which indicated that A.J.C.W.'s ADHD was better managed by medication, that his behavior had improved (e.g., A.J.C.W. had 28 disciplinary referrals in 6th grade, 15 in 7th grade, and only 3 during the first half of 8th grade), and that his academic performance had improved such that he was passing all of his courses, although he still struggled with maintaining focus and staying on topic. (Dkt. #8 at 29, 346-50, 558). Nonetheless, although A.J.C.W. had a Section 504 plan that provided for preferential seating,

redirection, checking for understanding and testing accommodations, A.J.C.W.'s challenges were not considered sufficiently serious to require special education services. *Id.*

Plaintiff argues that the ALJ's assessment of Dr. Chiang's opinion amounted to an improper "cherry-picking" of the record, and that the ALJ should not have considered A.J.C.W.'s academic progress or Woodcock-Johnson test scores because "ADHD is not a learning disorder; it is a behavioral disorder." Initially, I find that consideration of such evidence was manifestly proper, given that the limitations opined by Dr. Chiang included marked limitations in the domain of acquiring and using information, a domain to which the Woodcock-Johnson test results were clearly relevant. Moreover, the ALJ's assessment of Dr. Chiang's opinion acknowledged her treatment relationship with plaintiff and set forth good reasons for the weight afforded to it, including the fact that it was rendered more than a year after A.J.C.W.'s last treatment when he was not taking his prescribed medications, was inconsistent with objective testing and the report of A.J.C.W.'s school psychologist, and was unsupported by any objective findings or clinical testing, or by Dr. Chiang's own treatment records. I do not find that the ALJ's assessment of Dr. Chiang's opinion was erroneous.

Plaintiff also argues that the ALJ erred when he purported to give great weight to the opinion of School Psychologist Bartosch, but failed to incorporate into his findings the "marked limitations" that her opinion allegedly supported. The Court disagrees. While Ms. Bartosch's report makes note of the fact that according to his teachers, A.J.C.W. is "very easily distracted . . . gets out of his seat and socializes with other students [and] needs constant reminders to stay focused," the report makes no assessment of A.J.C.W.'s limitations using the terminology or detailed functional assessment that is relevant to the six domains of functioning (e.g., "moderate," "marked"). (Dkt. #8 at 347).

The Court observes that Ms. Bartosch's comments concerning A.J.C.W.'s distractibility appear to have been derived from questionnaires completed by A.J.C.W.'s teachers relative to the domain of attending and completing tasks. The questionnaires asked for assessment of limitations in 13 areas of "attending and completing tasks" functioning on a 5-point scale, with 1 representing "no problem" and 5 representing a "very serious problem". To the extent that A.J.C.W.'s teachers did identify "serious" and "very serious" problems in *some* of the functional areas, the questionnaires arguably could be interpreted to suggest marked (although not extreme) limitations in that domain. The ALJ afforded the questionnaires "some" weight, but discounted the more dramatic limitations they reported due to the fact that they were completed in early 2016, when A.J.C.W. was off of his ADHD medications, and that many of the questionnaires were incomplete and/or unsigned. (Dkt. #8 at 29). See Dkt. #8 at 225 (finding a "serious problem" in 2 of the 13 areas of assessment, with problems occurring "daily" but not hourly); 235 (finding a "serious problem" in 4 of the 13 areas of assessment and "very serious" problems in one area, with problems occurring daily or weekly but not hourly); 273 (finding a "serious" problem in 4 of the 13 areas of assessment, with problems occurring daily or weekly but not hourly).

The Court does not find that the ALJ erred in his assignment of "some" weight to the questionnaires. However, even assuming *arguendo* that the ALJ did err in declining to find that A.J.C.W.'s limitations in the domain of attending and completing tasks were "marked," that error would be harmless since the record does not support a finding of a marked or greater limitations in any other domain,[1] and as such, regardless of whether A.J.C.W.'s limitations in the domain of

---

[1] Although an incomplete questionnaire by one of A.J.C.W.'s teachers indicates "serious" or "very serious" problems in 4 of the 10 areas of assessment in the domain of "Acquiring and Using Information," those ratings, like Dr. Chiang's opinion of A.J.C.W.'s ability in this domain, are significantly belied by A.J.C.W.'s academic progress (e.g., grades have improved and he has never had to repeat a grade) and his average to higher-than-average scores in almost all categories in objective tests of his cognitive abilities. As such, the ALJ's decision to afford the opinion only "some" weight was not improper. Overall, I find that the ALJ's finding that A.J.C.W.'s limitations in the domain of acquiring and using information are "less than marked" is supported by substantial evidence.

attending and completing tasks was "marked" or less than marked, A.J.C.W. would still be found not disabled.

I have considered the rest of plaintiff's claims, and find them to be without merit.

**CONCLUSION**

For the foregoing reasons, I find that the ALJ's decision is supported by substantial evidence, and was not the product of legal error. The plaintiff's motion for judgment on the pleadings (Dkt. #12) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #17) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
June 21, 2019.